UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY GRAY, #351415,

                 Petitioner,                             Case Number 2:09-CV-13304
                                                           Honorable Gerald E. Rosen

v.

BLAINE LAFLER,

                 Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

## I. Introduction

Petitioner, Anthony Gray, is serving a life sentence plus two years for his Wayne Circuit Court convictions of first-degree murder, MICH. COMP. LAWS 750.316 , and felony-firearm MICH. COMP. LAWS 750.227b.  Petitioner's application for habeas relief raises six claims challenging his convictions: (1) Petitioner was denied the effective assistance of counsel when his attorney failed to secure the presence of two witnesses; (2) the prosecutor committed misconduct during closing argument by arguing facts not in evidence; (3) Petitioner's trial counsel failed to hire an expert witness on voice identification; (4) Petitioner's trial attorney failed to object to the in-court identification by a witness; (5) insufficient evidence was presented at trial to prove Petitioner's identity as one of the perpetrators; and (6) Petitioner received the ineffective assistance of appellate counsel.  The Court will deny the petition because Petitioner's claims are without merit.

## II. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals,

which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendants' convictions arise out the shooting death of Selina Dickson. According to the evidence, Dickson was walking toward a drug house in the early morning hours when defendants pulled up near her in a vehicle. Both defendants immediately exited the vehicle and began shooting at Dickson. Dickson ran to try to avoid the gunshots, but was struck at least twice. After the shooting, defendants left the area, and Dickson made her way to the porch of the drug house, where she died.

*People v. Gray*, 2007 Mich. App. LEXIS 142, *2 (Mich. Ct. App. Jan. 25, 2007).

The key evidence presented at trial connecting Petitioner to the crime was the testimony of Vanessa Smith.  Smith testified that she was walking on the sidewalk a few houses away from the victim when the shooting occurred.  Though both perpetrators were wearing masks, she testified that she had known both men for years and recognized them by their voices and builds.  There was evidence presented indicating that Petitioner's co-defendant, Elijah Gray, had threatened the victim over a drug debt a few weeks before the shooting, and there was some testimony that Petitioner and his co-defendant were associated.  But other than Smith's testimony, there was little other evidence directly tying Petitioner to the crime.

Following his convictions, Petitioner and his co-defendant filed appeals by right in the Michigan Court of Appeals.  Petitioner's appellate brief raised what now form his first two habeas claims. The Michigan Court of Appeals affirmed his convictions in an unpublished opinion.[1]  *Id.* Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, but it was denied by standard order.  *People v. Gray*, 478 Mich. 873 (2007) (table).

Petitioner then returned to the trial court and filed a motion for relief from judgment.  The

---

[1]The state appellate court reversed Petitioner's conviction for felon in possession of a firearm on the ground that the prosecutor did not present sufficient evidence that he had a prior felony conviction.

2

motion raised what now forms Petitioner's third through sixth habeas claims. The trial court denied the motion in an undated opinion which reached the merits of each of Petitioner's new claims. Petitioner appealed this decision to the Michigan Court of Appeals, but it denied the application for leave to appeal because Petitioner "failed to meet the burden of establishing entitlement to habeas relief under Michigan Court Rule 6.508(D)." *People v. Gray*, No. 286606 (Mich. Ct. App. December 4, 2008). Petitioner appealed this decision to the Michigan Supreme Court but it also denied relief under Rule 6.508(D).

Petitioner then filed the instant action, raising all the claim he presented to the state courts both on direct and post-conviction review.

## III. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme

3

Court] to the facts of a prisoner's case." *Id*. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*.  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in

4

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

## IV. Discussion

### A.  Ineffective Assistance of Trial Counsel

Three of Petitioner's habeas claims–his first, third, and fourth–assert this his trial attorney provided ineffective assistance of counsel.  His first claim alleges that his attorney should have requested a hearing prior to trial challenging the prosecutor's efforts to locate Joshua Young and Leonard Harris and present them at trial.  These two men were inside the drug house near where the victim was killed, and they called the police after they noticed her body on the porch.  Petitioner's second claim argues that his counsel was ineffective for failing to hire an expert witness on voice identification.  And petitioner's fifth claim asserts that his counsel was ineffective for failing to challenge the in-court identification by Vanessa Smith, the eyewitness to the shooting who testified that she recognized Petitioner by his voice.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether  a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel

is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

Because all of Petitioner's claims regarding ineffective assistance were adjudicated on the merits by the Michigan state courts either during direct appeal or on postconviction review, § 2254(d) governs review. *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard. *Id.* at 788.

### 1. Failure to secure witnesses

Petitioner's first allegation of ineffective assistance of counsel concerns his attorney's failure to secure the presence of Leonard Harris and Joshua Young at trial. The Michigan Court of Appeals rejected this claim on the merits as follows:

> On appeal, Anthony Gray first argues that he, too, was denied the effective

assistance of counsel. Anthony agues that he was denied the effective assistance of counsel because his counsel failed to request a due diligence hearing to determine why the prosecution failed to produce Young and Harris as witnesses. We disagree.

A prosecutor has a continuing duty "to advise the defense of all res gestae witnesses that the prosecutor intends to produce at trial. Put in other terms, the prosecutor's duty to produce res gestae witnesses was replaced with the duty to provide notice of known witnesses and to give reasonable assistance in the locating of witnesses if a defendant requests such assistance." *People v. Snider*, 239 Mich. App. 393, 423 (2000). Defense counsel requested that the prosecution produce Young and Harris as witnesses, or that the prosecution assist him in producing these witnesses. The prosecution informed counsel that Young and Harris were two "dope" dealers who ran a "dope" house and that their whereabouts were unknown. The prosecution further informed defense counsel that they tried to locate these witnesses through the means of an investigator but the men were no longer at the "dope" house. The prosecutor then maintained that she would comply with the court order and have the police conduct a diligent search to see if Young and Harris were in the county jail. The prosecution's investigator, Officer James Fisher, testified at trial and he maintained that he looked for Young and Harris "all over the place" and that he also had individuals in the neighborhood looking for them. Officer Fisher said he was informed that Harris had another "dope" house in the neighborhood and he went there to search for him, but the house had been burned.

Anthony has failed to show that his counsel's failure to request a due diligence hearing denied him the effective assistance of counsel. A due diligence hearing would have been futile because the prosecutor already placed on the record that she tried to locate Young and Harris but her efforts were unsuccessful. "The test [of due diligence] is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good faith efforts were made to procure the testimony, and not whether more stringent efforts would have produced it." *People v. Bean*, 457 Mich. 677, 684(1998).

It appears from the record that the prosecutor diligently tried to locate Young and Harris to present them at trial, but Young and Harris could not be located. In light of Officer Fisher's testimony and the prosecutor's statements on the record, defense counsel most likely concluded that the prosecutor's efforts to locate and produce Young and Harris constituted due diligence, and that a hearing would be futile. Counsel is not obligated to make futile requests. *People v. Milstead*, 250 Mich. App. 391, 401 (2002). Therefore, defense counsel was not ineffective for failing to move for a due diligence hearing.

Anthony also argues that he was denied the effective assistance of counsel because his counsel failed to request a missing witness instruction. We disagree.

A missing witness instruction may be appropriate when the prosecution does

7

not show due diligence in locating a missing witness. *People v. Perez*, 469 Mich. 415, 420 (2003). In this event, "it might be appropriate to instruct a jury that the missing witness would have been unfavorable to the prosecution." *Perez*, *supra*, p 420. Because it appears that the prosecution used due diligence in trying to locate Young and Harris, a missing witness instruction was unwarranted. Anthony's ineffective assistance of counsel claim based on a missing witness instruction is without merit.

*Gray,* 2007 Mich. App. LEXIS 142, *12-16.

This decision did not involve an unreasonable application of the *Strickland* standard. On the first morning of trial, defense counsel indicated to the court that Joshua Young and Leonard Harris were listed on the prosecutor's witness list and that they were crucial to the defense. Counsel indicated that he had learned that the witnesses would not be available. He asked for the prosecutor's assistance in locating them and bringing them to court for trial. The prosecutor responded that the two individuals were "the two dope dealers that ran the dope house at 476 West Robinwood. An attempt of Investigator Fisher made a preliminary attempt to find them; they're no longer at that location and their current whereabouts are unknown." Tr. 7/20/2005, at 4. The prosecutor indicated that she would have the police search the county jail for the two men. Defense counsel then indicated that he would ask for an adverse witness instruction if the witnesses were not located. Investigator Fisher testified later during the trial that Young and Harris were the two men at the dope house when the victim's body was found on the porch. He attempted to subpoena both men but was unable to locate them. On cross-examination Fisher testified "I looked from them all over the place in the area. Yes, I did. I had individuals in the neighborhood that also pointed out to me another dope spot in which Mr. Harris was dealing from. And I did go over there to find that the house had been burnt out for about a week and half now. So I have been looking for both of them." Id. at 77.

In light of this record evidence, the state appellate court's conclusion that Petitioner was not

8

prejudiced by his counsel's failure to request a so-called due diligence hearing was reasonable. Under Michigan law, a prosecutor is compelled to render reasonable assistance in locating and serving process upon witnesses upon request of the defendant. MICH. COMP. LAWS 767.40a(5). Where a witness is not produced, a defendant may request a hearing to determine whether the prosecutor rendered reasonable assistance. *People v. Eccles*, 260 Mich. App. 379, 389 (2004). "[D]ue diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of a witness." *Id.* at 391. If a court finds that the prosecutor did not act with due diligence, then "the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case." *Id.* at 388.

The two missing witnesses did not have any known permanent address, nor did they have regular employment. Rather, they were identified as individuals who worked and lived at drug houses. The police attempted to locate them by canvassing the area. They had one lead to another drug house, but it had been burnt down and abandoned. There is no indication that further reasonable steps existed that would have led to the missing witnesses. Assuming Petitioner's attorney had requested a due-diligence hearing, there is not a reasonable probability that the trial court would have found that the prosecutor did not render reasonable assistance in light of the difficulty in locating individuals who float from one drug house to another. Indeed, Petitioner does not indicate what further steps he believes the police should have undertaken to locate the witnesses. Accordingly, there is not reasonable probability that the trial court would have instructed the jury to assume that the missing witnesses' testimony would not have been favorable to the prosecutor.

Because the state court reasonably adjudicated the claim, it cannot form the basis for granting habeas relief.

**2. Failure to obtain identification expert**

Petitioner's third habeas claim asserts that his counsel was ineffective for failing to obtain an expert witness on voice identification. This claim was raised in his motion for relief from judgment in the trial court. The trial court denied the claim because "defense counsel was able to pursue other available methods for attempting to discredit Smith's identification testimony, including vigorous cross-examination, which brought out many inconsistencies in Smith's testimony. Finally, defendant has failed to demonstrate that expert testimony would have been so beneficial to the defense that it would have resulted in a different outcome at trial." Opinion Denying Motion for Relief From Judgment, p 5.

This decision did not involve an unreasonable application of the *Strickland* standard. With regard to the failure to call an expert on eyewitness identification testimony, federal courts have held that a defense attorney's cross examination of eyewitnesses is a sufficient method of attempting to deal with the issues presented. *See Dorch v. Smith*, 105 F. App'x 650, 653, 656-57 (6th Cir. 2004); *Tipton v. United States*, No. 96-5026, 1996 U.S. App. LEXIS 25466, 1996 WL 549802, at * 1-2 (6th Cir. Sept. 26, 1996); *accord Ferensic v. Birkett*, 501 F.3d 469, 474, 484 (6th Cir. 2007) (panel majority acknowledging the precedent established "by *Dorch*, *Tipton*, and similar cases," and restricting its decision to petitioner's claim that his right to present a defense had been denied when the trial court excluded his expert's testimony). The failure to call an expert witness on eyewitness identification does not satisfy the *Strickland* standard where defense counsel made a tactical decision not to call such a witness and cross-examined the eyewitnesses regarding inconsistencies in their identification of the petitioner. *See Dorch*, 105 F. App'x 650 at 657.

That is exactly what happened in Petitioner's case. His attorney thoroughly cross-examined Vanessa Smith concerning her voice identification of Petitioner. Defense counsel impeached her

10

claim she attended school with co-defendant's brothers.  He impeached her with contradictory statements she made at the preliminary examination.  He pointed out that she was mistaken as to the victim's identity, but claimed to know the shooters even though their faces were covered.  And he challenged her credibility regarding her claim that she could recognize Petitioner's voice while guns were being fired.  Petitioner cannot show that failure to present an expert witness on eyewitness testimony as well amounted to ineffective assistance of counsel.  The decision of the state appellate court was reasonable, and Petitioner is therefore not entitled to habeas relief on this claim.

**3.  Failure to object to in-court identification**

Petitioner's fourth habeas claim asserts that her counsel was ineffective for failing to object to Smith's in-court identification of Petitioner because it was the product of an impermissibly suggestive photographic identification procedure.  This claim was also raised for the first time in Petitioner's motion for relief from judgment and denied by the trial court on the merits.  The trial court reasoned that "there was no substantial likelihood of misidentification because Vanessa Smith had known defendant for two years prior to the shooting.  Further, it appears that the photo was shown to Smith not to determine if it was defendant who committed the shooting, but to help the police officers determine the correct name for defendant."  Opinion Denying Motion for Relief from Judgment, at 6.

This decision was not unreasonable.  Failure to move to suppress an unduly suggestive identification can form the basis of an ineffective-assistance-of-counsel claim.  *See Millender v. Adams*, 376 F.3d 520, 524-25 (6th Cir. 2004).  A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967).  Similarly, a subsequent in-court identification following an

11

impermissibly suggestive pre-trial identification is unconstitutional if the pre-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). *See generally, Neil v. Biggers*, 409 U.S. 188, 197-98 (1972).

But here, as correctly noted by the trial court, the photographic identification procedure was not used to see if Smith recognized the individual in the photograph as the perpetrator by his appearance. Rather, the photograph was used to see if the person Vanessa Smith identified by a street-name was the same person pictured in the photograph. Smith testified that she knew Petitioner for a few years prior to the incident. She testified that one of the names Petitioner went by on the street was Derrick Smith. She did not know his real name at the time of the incident. When Vanessa told police that she recognized Derrick Smith as one of the perpetrators, they showed her a photograph of Petitioner to see if that was the person she was referring to. She identified Petitioner's photograph as depicting the man she knew as Derrick Smith. Accordingly, Vanessa was not being asked to match her recollection of a stranger's appearance to a photograph. Instead, the police were attempting to ascertain whether the person she knew for several years as Derrick Smith was, in fact, Petitioner, Anthony Gray. Because the police did not use Petitioner's photograph in a way that was unduly suggestive but were simply trying to ascertain whether Vanessa was referring to Petitioner when she used the name Derrick Smith, her counsel did not have grounds to object to her in-court identification of Petitioner.

Accordingly, Petitioner's claims of ineffective assistance of counsel are without merit.

**B. Prosecutorial Misconduct**

Petitioner claims that the prosecutor committed misconduct during closing argument by arguing facts that were not supported by the evidence. He also asserts that his counsel was

12

ineffective for failing to object. This claim was raised in the Michigan Court of Appeals during

Petitioner's appeal of right. The state appellate court denied it as follows:

> Anthony next argues that he is entitled to a new trial because the prosecutor improperly argued facts that were not in evidence and defense counsel failed to object to the improper argument. We disagree.
>
> We review Anthony's unpreserved prosecutorial misconduct claim for plain error. *Ackerman, supra*, p 448. Because Anthony did not move for a new trial or an evidentiary hearing with respect to his ineffective assistance of counsel claim, our review is limited to the record. *Barclay, supra*, p 672.
>
> The prosecutor argued throughout closing that drugs lead to Dickson's death. Specifically, the prosecutor argued that the possession of drugs and the selling of drugs were the underlying motive behind Dickson's death. The prosecutor further argued that Dickson was killed over the allegation that she stole "rocks of cocaine." Even without the prosecutor's comments, however, the jury could have reached this conclusion on its own. Evidence was presented which showed that Elijah was a drug dealer and Dickson was a drug user. The evidence also showed that, two weeks before the shooting, Elijah threatened to "get" Dickson over some "eight ball dope." It was reasonable for the jury to conclude that the dispute between Elijah, a drug dealer, and Dickson, a drug user, was more than likely over stolen drugs or over the non-payment of drugs.
>
> The above being true, Anthony's ineffective assistance of counsel claim based upon a failure to object to the prosecutor's statements is meritless. Even if counsel's failure to object to the statement fell below an objective standard of reasonableness, Anthony has failed to show that the outcome of the case would have been different but for counsel's error. The evidence clearly showed that Elijah was a drug dealer and Dickson a drug user and that two weeks before the shooting Elijah threatened to "get" Dickson over drugs. Smith identified Elijah and Anthony as the persons directly responsible for Dickson's death. The statement regarding the stolen drugs was introduced to establish the motive behind the killing, but even if the statement was never placed before the jury the outcome would remain the same because direct evidence was presented connecting Anthony to Dickson's murder.
>
> Furthermore, the court instructed the jury that the lawyers' statements and arguments were not evidence and that it should "only accept things that the lawyers say that are supported by evidence or by [its] own common sense and general knowledge." Thus, even if the challenged remarks had any prejudicial potential, the trial court's instructions were sufficient to eliminate any prejudice that may have stemmed from the prosecutor's statement. *Daniel, supra*, p 57.

*Gray*, 2007 Mich. App. LEXIS 142, *16-17.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id.* at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: (1) whether the statements tended to mislead the jury or prejudice the accused; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally before a jury; and (4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-550 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Petitioner asserts that the prosecutor engaged in misconduct by misstating the evidence and misleading the jury about possible motives for the murder. It is well-settled that a prosecutor may not misstate the evidence or assume the existence of prejudicial facts not in evidence. *See Donnelly*, 416 U.S. at 646; *Darden v. Wainwright*, 477 U.S. 168, 182 (1986). Here, the prosecutor inferred in her closing argument that the victim was killed because she had stole drugs from the perpetrators.

14

The prosecutor did not misstate the evidence or assume facts not in evidence by making this inference.  The evidence at trial suggested that Petitioner's co-defendant was a street level drug dealer and that the victim was a regular drug user.  A witness testified that she had previously seen Petitioner with his co-defendant on the streets and in a car.  A prosecutor has leeway to argue the evidence and reasonable inferences  therefrom. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).  The prosecutor's inference that the victim was shot because she stole drugs from Petitioner's co-defendant was reasonable in light of the evidence presented at trial.  Because the argument was proper, Petitioner has failed to establish that the prosecutor committed misconduct or that his trial attorney was ineffective for failing to object to the argument.  The claim does not merit habeas relief.

### C.  Sufficiency of the Evidence at Trial

Petitioner claims that constitutionally insufficient evidence was offered at trial to establish his identity as one of the perpetrators.  This claim does not provide a basis for granting habeas relief because it was reasonably rejected by the trial court when it denied Petitioner's motion for relief from judgment.

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 318-19 (internal citation and footnote omitted)(emphasis in the original).

15

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 132 S.Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*

Here, after reciting the *Jackson* standard, the trial court denied Petitioner's claim as follows:

> Smith's testimony that it was defendant's voice she heard was reasonably positive and assertive. Smith's belief that it was defendant's voice she heard never waned throughout the proceedings. While Smith knew defendant by another name, when shown a photograph of defendant, she identified him as the person whose voice she heard during the shooting. Smith also had sufficient knowledge about defendant's voice as she had known him for the past two years and had previously heard him speak. Finally, although defendant argues that Smith was not a credible witness, this Court will not interfere with the jury's role in determining the credibility of witnesses.

Opinion Denying Motion for Relief from Judgment, at 3-4.

This certainly is not a case where overwhelming evidence was presented to establish Petitioner's identity as one of the perpetrators. There was testimony that his co-defendant threatened the victim a few weeks prior to the incident. There was testimony that Petitioner and co-defendant were somehow associated with each other. And there was evidence that Petitioner was seen in the area with the co-defendant after the shooting. But these items were insufficient by themselves to tie Petitioner to the murder. The key testimony belonged to Vanessa Smith. About one week after the shooting, Smith identified photographs of Petitioner and the co-defendant as the two shooters. She testified that she was walking a few houses behind the victim as they were both headed towards the drug house. She described how a car pulled up alongside the victim, two men got out, and shot her

16

to death.  Her testimony identifying Petitioner as one of the two men consisted of the following:

Q: Anthony Gray, who you referred to the guy in the purple tie, as Anthony Gray. How long did you know him or know of him?

A: I had knew him for a few years.

Q.  Had you met him through the streets?

A: Yes.

* * *

Q: Anthony Gray got out of the passenger side, what was he wearing?

A: All black.

Q: Anything on his head or face?

A: Yes.

Q: What?

A: A ski mask.

Q: Did he say anything?

A: Die hoe.

Q: What?

A: Die hoe.

Q: Die hoe?

A: Yes.

***

Q: The guy that got out of the passenger's side how did you recognize him?

A: His built and his voice.

Q: Sorry?

17

A: His built and his voice.

Q: And who's voice was that?

A: Anthony Gray.

***

Q: Anthony Gray said what?

A: Die hoe, that this is for you hoe.

***

Q: You are positive that Anthony Gray is the one that got out of the passenger's side and shot Selina?

A: Yes.

Q: Positive?

A: Yes.

Q: Anthony Gray, also known as Derrick or Eric or whatever?

A: Yes.

And that was really all that tied Petitioner to the shooting–one eyewitness's testimony that she was positive Petitioner was one of shooters because she recognized his voice and his build. The question probably was a close one for the jury. Was there enough doubt regarding Smith's ability to identify Petitioner by his voice and build alone to create a reasonable doubt? The jury evidently thought not. The question for the trial court deciding the claim on post-conviction review was less difficult. Under the *Jackson* standard, it was required to view the evidence most favorably to the prosecution–meaning it was required to assume that Smith's testimony was viewed as credible by the jury. *See e.g., Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). The question for this Court is yet another step removed from the question asked of the jury: Was the decision of the state

18

trial court a reasonable application of the *Jackson* standard?   The answer is "yes," so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S.Ct. at 786.

It is difficult to characterize the state court decision as unreasonable under this standard.  The state trial court cited the correct standard of review, and then outlined the evidence that supported its conclusion that the evidence was sufficient.  While that evidence amounted to one eyewitness's identification testimony, there is certainly no rule of law holding that a single witness's identification testimony is insufficient to support a conviction.  *See, e.g., Lee v. Curtin*, 2011 U.S. Dist. LEXIS 152990, *21 (W.D. Mich. Dec. 14, 2011) ("The appellate court was clearly correct in determining that the victim's testimony, even standing alone, was sufficient to establish identity in the circumstances of this case. If petitioner's argument were accepted, the Constitution would forbid conviction of any criminal who covered his face during the perpetration of a crime, despite the victim's unequivocal testimony that the victim was nevertheless able to identify the perpetrator by voice, demeanor, and other features. No decision of the Supreme Court has ever articulated such an impossible standard for criminal prosecutions.").  Accordingly, the Court finds that Petitioner's sufficiency of the evidence claim does not survive review under § 2254(d).

## D.  Ineffective Assistance of Appellate Counsel

Petitioner's final claim asserts that his appellate counsel was ineffective for failing to raise the claims that Petitioner raised in his post-conviction proceeding.  Petitioner does not seek a new appeal of right.  Rather, he asserts that his appellate counsel's ineffective constitutes cause to excuse any procedural default of his post-conviction claims.  Because the Court did not impose any default and rejected these claims on the merits, this claim is moot.  *See e.g., Thompkins v. Ludwig*, 2011 U.S. Dist. LEXIS 45803 ( E.D. Mich. Apr. 28, 2011)**.**

**V. Certificate of Appealability**

Pursuant to Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009:

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).  If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.
>
> Rule 11, Rules Governing Section 2254 Proceedings.

When a district court denies a habeas petition a certificate of appealability should issue only if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In the present case, for reasons stated in greater detail in the opinion and order denying the petition, this Court found that Petitioner's application for a writ of habeas corpus is meritless.   The Court will deny petitioner a certificate of appealability with respect to all of his claims because reasonable jurists would not find it debatable whether this Court was correct in determining that the petition should be denied.  The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because any appeal would be frivolous.

20

**VI. Conclusion**

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **DENIES** a certificate of appealability and permission to proceed on appeal in forma pauperis.

**SO ORDERED.**


                        s/Gerald E. Rosen_____
                        Chief Judge, United States District Court

Dated:  March 27, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 27, 2012, by electronic mail and upon Anthony Gray, #351415, G. Robert Cotton Correctional Facility, 3500 N. Elm Road, Jackson, MI 49201 by ordinary mail.

                        s/Ruth A. Gunther_____
                        Case Manager

21